UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD R. LeDUC : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No.  3:05cv157 (MRK) |
| : | PRISONER |
| : | |
| JAMES R. TILLEY, ET AL. : | |
|     Defendants. : | |

### RULING AND ORDER

Plaintiff, Donald LeDuc is confined at the Carl Robinson Correctional Institution in Enfield, Connecticut.  He brings this 42 U.S.C. § 1983 civil rights action *pro se* pursuant to 28 U.S.C. § 1915.  Mr. LeDuc alleges that his rights under the Second, Fifth, Eighth and Fourteenth Amendments were violated when state officials, while enforcing state statutes, seized and destroyed his collection of firearms.  For the reasons that follow, the Court dismisses all of Mr. LeDuc's claims.

### I.

Mr. LeDuc has met the requirements of 28 U.S.C. § 1915(a) and has been granted leave to proceed *in forma pauperis* in this action.  However, pursuant to 28 U.S.C. § 1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).  *See Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000) (dismissal of a complaint by a district court under any of the three enumerated sections in 28 U.S.C. § 1915(e)(2)(B) is mandatory rather than discretionary).

In reviewing the complaint, the court "accept[s] as true all factual allegations in the

complaint" and draws inferences from these allegations in the light most favorable to the plaintiff. *Cruz*, 202 F.3d at 596. "When an *in forma pauperis* plaintiff raises a cognizable claim, his complaint may not be dismissed *sua sponte* for frivolousness under § 1915(e)(2)(B)(i) even if the complaint fails to flesh out all the required details." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quotations and citations omitted). Dismissal of the complaint under 28 U.S.C. § 1915(e)(2)(B) is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 597 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Furthermore, the Second Circuit has recently emphasized that "*pro se* litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover. It is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). It is up to the district court to determine what claims a *pro se* plaintiff's complaint could raise, and in doing so, "the court's imagination should be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings." *Id.*

## II.

Mr. LeDuc's claims are based on the following facts alleged in his Complaint. On May 9, 2001, in response to a harassment complaint made by one of Mr. LeDuc's co-workers, Defendants Connecticut State Troopers Weber, Tilley and McWilliams executed search and seizure and arrest warrants at Mr. LeDuc's home in Hamden, Connecticut. *See* Compl. [doc. #1] at 3-3D. Mr. LeDuc's weapons collection was seized by the Connecticut State Police in accordance with section 29-38c of the Connecticut General Statutes, which authorizes the seizure of firearms from

a person "pos[ing] a risk of imminent personal injury to himself or herself, or to other individuals," and Mr. LeDuc was arrested for violations of the State's pistol permit regulations.  *See id.* at 4-4D.  Among the twenty-four weapons seized was a collection of eleven pistols and revolvers valued by Mr. LeDuc at approximately $7,000.  *See* Compl. at 4C-4D.  Mr. LeDuc values the remaining thirteen firearms at $8,000.  *See* Compl. at 3C.

From May 9, 2001, until January 4, 2002, Mr. LeDuc was held on bond and his weapons were stored at the Connecticut State Police Barracks for Troop I in Bethany, Connecticut.  Mr. LeDuc later pleaded guilty to violating section 29-28 of the Connecticut General Statutes, which requires, among other things, that any holder of a pistol permit notify the authority issuing the permit of any change of address within two business days of the change.  *See id*. at 4B.  The penalty for violating section 29-28 is set forth in section 29-37(a), which provides that "[a]ny person violating any provision of section 29-28 or 29-31 shall be fined not more than five hundred dollars or imprisoned not more than three years, or both, and any pistol or revolver found in the possession of any person in violation of any said provisions shall be forfeited."

On January 4, 2002, Mr. LeDuc appeared before Connecticut Superior Court Judge Earl Richards for sentencing.  As part of his penalty for violating section 29-28, Mr. LeDuc's eleven pistols and revolvers were forfeited to the State.  *See* Compl. at 4C.  Assistant State's Attorney James Turcotte also asked the court to order the destruction of all twenty-four of Mr. LeDuc's seized weapons.  Mr. LeDuc asked that his collection of thirteen firearms valued at $8,000 be transferred in accordance with section 29-38c(e) of the Connecticut General Statutes, which allows "[a]ny person whose firearm or firearms have been ordered seized pursuant to subsection (d) of this section" to "transfer such firearm or firearms in accordance with the provisions of

section 29-33 . . . to any person eligible to possess such firearm or firearms." Judge Richards denied the request and ordered the entire collection of twenty-four weapons destroyed. Trooper Kennedy then destroyed the weapons in November 2002, in accordance with the Judge Richard's order. *See id*. at 4C.

### III.

For the reasons stated below, Mr. LeDuc cannot maintain any of the claims stated in his Complaint based on the facts he has alleged. The Court addresses each claim in turn.

#### A.    Second Amendment

Mr. LeDuc claims that in seizing and destroying his weapons collection, Defendants violated his Second Amendment right to bear arms. *See* Compl. at 4D ("Plaintiff claims that his Second Amendment Right to bear arms was violated . . . since the Plaintiff never had any control over the fate of his firearm collection."). However, Mr. LeDuc cannot maintain a Second Amendment claim against Defendants because, as the Second Circuit recently held, " 'the right to keep and bear arms' does not apply against the States" and "is a right only against the federal government." *Bach v. Pataki*, 408 F.3d 75, 84-86 (2d Cir. 2005) (citing *Presser v. Illinois*, 116 U.S. 252 (1886)). Mr. LeDuc's Second Amendment claims are asserted only against the State. Indeed, his Complaint is premised entirely upon application of sections 29-28, 29-37 and 29-38c of the Connecticut General Statutes, and it names only state actors as defendants. Because Mr. LeDuc's Second Amendment claims are barred by the Second Circuit's recent decision in *Bach*, the Court dismisses his Second Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

#### B.    Fourteenth Amendment

Next, Mr. LeDuc also makes what the Court liberally construes as a "void for vagueness"

due process claim.  *See* Compl. at 3F ("Plaintiff claims that his Fourteenth Amendment Right was violated, because [section 29-38c] failed to clarify for the Plaintiff that his firearm would or would not be able to be transferred.").  In particular, Mr. LeDuc alleges that Defendants violated his due process rights when they applied section 29-38(c) to him, because the words "may transfer" in the statute are "misleading" and "gave the Plaintiff a false hope" that he would be able to transfer his gun collection to another person, "without indicating that the weapons could be taken without any possibility of salvage."  Compl. at 3F.  Mr. LeDuc cannot maintain a void for vagueness claim based on the facts he has alleged.

The void for vagueness doctrine is rooted in the principle that "[t]he Due Process Clause requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them."  *Perez v. Hoblock*, 368 F.3d 166, 174 (2d Cir. 2004) (citations and quotation marks omitted).  Therein lies the principal problem with Mr. LeDuc's claim: the portion of the Connecticut statute that he identifies as "misleading" does not forbid or proscribe any conduct.  To the contrary, section 29-38c(e) simply permits a person in Mr. LeDuc's situation to request transfer of seized firearms to another person; the section itself does not prohibit any conduct.  *See United States v. Payden*, 598 F. Supp. 1388, 1396 (S.D.N.Y. 1984) (statute that did not prohibit conduct was not proper subject of a vagueness challenge), *rev'd on other grounds*, 759 F.2d 202 (2d Cir. 1985).  Because Mr. LeDuc does not, and cannot, allege that section 29-38(c)(e) failed to give him notice as to what conduct was "prohibited," the Court dismisses his Fourteenth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.     Fifth Amendment

Mr. LeDuc also asserts that Defendants violated his rights under the takings clause of the Fifth Amendment by requiring forfeiture of his collection of eleven pistols and revolvers, which he values at approximately $7,000, as well as thirteen other firearms which he values at $8,000, without providing him just compensation.  *See* Compl. at 3C-3E.

Mr. LeDuc's claim with respect to the pistols and revolvers fails because a statutory forfeiture without compensation is not an unlawful taking under the Fifth Amendment.  It is well-established that "if the government acts pursuant to a forfeiture statute, it may seize personal property without compensating the owner." *Redford v. U.S. Dep't of Treas.*, 691 F.2d 471, 473 (10th Cir. 1982) (collecting cases).  *See also Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.").  Indeed, courts routinely approve statutory forfeitures of property without compensation.  *See, e.g.*, *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 366 (1984) (approving of statutory forfeiture of firearms where owner was acquitted of criminal charges involving firearms); *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004) (approving of statutory forfeiture of $16,000 that was intended to be used in a drug offense).

As Mr. LeDuc alleges in his Complaint, his pistols and revolvers were destroyed after he pleaded guilty to violating section 29-28.  *See* Compl. at 4A.  As Mr. LeDuc also recognizes, section 29-37(a) expressly authorizes forfeiture of any pistols or revolvers found in possession of a person who violates the State's pistol permit regulations contained in section 29-28.  *See* Compl. at 4D.  In those circumstances, Mr. LeDuc cannot maintain a Fifth Amendment takings claim for

forfeiture of his pistols and revolvers.

The status of Mr. LeDuc's claim Fifth Amendment claim regarding his remaining eleven firearms is less clear. On the facts as alleged by Mr. LeDuc, the Court is unable to discern what statutory authority, if any, Defendants asserted in requiring forfeiture and destruction of Mr. LeDuc's remaining eleven firearms. Section 29-38c does not appear to authorize the State to hold firearms seized pursuant to that section for more than one year. *See* Conn. Gen. Stat. § 29-38c(d) ("If [after a hearing] the court finds by clear and convincing evidence that the person [whose firearms were seized] poses a risk of imminent personal injury to himself . . . or to other individuals, it may order the . . . firearms seized pursuant to the warrant issued under subsection (a) of this section continue to be held by the state for a period not to exceed one year.").

However, even assuming that Mr. LeDuc could state a viable takings claim regarding the forfeiture of the remaining eleven firearms, he is nonetheless required to exhaust state remedies before asserting such a claim in this Court. *See Williamson County Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985) ("[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *see also San Remo Hotel, L.P. v. City and County of San Francisco*, --- S.Ct.---, 2005 WL 1421451, at *13 (June 20, 2005) (same). In *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995), the Second Circuit recognized that the Connecticut Constitution contains "a straight forward takings clause" and required a plaintiff, like Mr. LeDuc, to seek compensation under the State's Constitution before bringing a federal takings claim. *Id*. at 380 ("So long as a remedy potentially is available under the state constitution's provision, [plaintiff] has not yet met the preconditions for

a valid takings claim."). Mr. LeDuc has not stated or suggested anywhere in his Complaint that he has satisfied this exhaustion requirement. The Complaint does contain an allegation that Mr. LeDuc filed a claim for property loss with Connecticut's Claims Commissioner. *See* Compl. at 6. However, he does not allege that his claim has been fully and finally adjudicated as is required by the Second Circuit. Unless and until Mr. LeDuc exhausts his state remedies, any federal takings claim he might have is not yet ripe, and this Court lacks subject matter jurisdiction over it. *See Warboys v. Proulx*, 303 F. Supp. 2d 111, 117 (D. Conn. 2004) (dismissing plaintiff's federal takings claim as unripe for failure to exhaust state remedies).

Accordingly, the Court dismisses Mr. LeDuc's Fifth Amendment claims regarding forfeiture of his pistols and revolvers pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and dismisses Mr. LeDuc's Fifth Amendment claim regarding his remaining firearms as unripe. The Court will provide Mr. LeDuc an opportunity to amend his Complaint to address the latter defect if he has basis in fact to assert that he has satisfied exhaustion requirements.

**D.     Eighth Amendment**

Finally, Mr. LeDuc asserts an Eighth Amendment claim challenging his conviction, the length of his sentence, and the forfeiture of his weapons. First, Mr. LeDuc alleges that "his Eighth Amendment Right of the U.S. Constitution" was violated when "the penalty provided for violation of [section] 29-28 as stated in [section] 29-37 resulted in a felony conviction and a prison term which was far too harsh and wildly disproportionate for the Plaintiff's act of failing to notify CT State Police of an address change." Compl. at 4C. Based on the facts that he has alleged, Mr. LeDuc cannot maintain an Eighth Amendment claim under §1983 regarding his conviction or the length of his sentence. It is well-established that:

> [W]here a judgment in favor of the plaintiff would necessarily implicate the validity of the plaintiff's conviction or the length of his sentence, a cause of action under section 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence had been reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a federal writ of habeas corpus."

*Torres v. Stewart*, 263 F. Supp. 2d 463, 467 (D. Conn. 2003) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Mr. LeDuc has not alleged that his conviction or sentence has been reversed. Because Mr. LeDuc's claim is precisely the kind of claim that *Heck* bars, the Court dismisses Mr. LeDuc's Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) insofar as he challenges his conviction and the length of the sentence he received.

Mr. LeDuc also asserts that the forfeiture of his weapons collection also violated the Excessive Fines provision of the Eighth Amendment. *See* Compl. at 3E ("by the actions of the Defendants, [Plaintiff's] . . . Eighth Amendment (excessive fines shall not be imposed) . . . Rights of the U.S. Constitution were violated."); *id.* at 4C (same). The Supreme Court has held that a forfeiture could violate the Excessive Fines clause of the Eighth Amendment if the forfeiture was "grossly disproportionate to the gravity of the offense" for which forfeiture was found appropriate. *United States v. Bajakajian*, 524 U.S. 321, 333 (1998). This principle applies to both criminal and civil forfeitures. *See, e.g.*, *Austin v. United States*, 509 U.S. 602, 610 (1993); *United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003).

For three reasons, the Court entertains considerable doubt whether Mr. LeDuc has stated a viable Eighth Amendment claim under the Excessive Fines clause. First, the Court questions whether Mr. LeDuc's § 1983 action concerning the forfeiture of his firearms is actually an indirect attack on his underlying criminal sentence. *See Jordan v. Appeldorn*, No. Civ. A. 00-1717, 2000

WL 1100786, at *4 n.6 (E.D. Pa. Aug. 1, 2000). If it is, then this claim would also appear to be barred by *Heck*. Second, while the Court does not discount Mr. LeDuc's personal sense of loss over the forfeiture and destruction of Mr. LeDuc's pistols and revolvers pursuant to section 29-37, it seems unlikely that forfeiture of eleven pistols and revolvers with a total value of approximately $7,000 is "grossly disproportionate" to the gravity of his offense within the meaning of the relevant case law. *See Bajakajian*, 524 U.S. at 333-38; *United States v. 32 Medley Lane*, --- F. Supp. 2d ---, 2005 WL 1341135, at *5-*6 (D. Conn. May 31, 2005). Third and finally, with respect to Mr. LeDuc's remaining firearms, the Court questions whether the forfeiture of these firearms constitutes punishment. A forfeiture is subject to the Excessive Fines clause only if "it is punishment." *Austin*, 509 U.S. at 609-10. Putting aside the question of whether the State was authorized to require forfeiture of firearms seized pursuant to Conn. Gen. Stat. § 29-38c, the language of that provision suggests a non-punitive purpose.

Nevertheless, the Court need not at this time decide these issues, because as the Court explains below, there are other defects in Mr. LeDuc's Eighth Amendment claims that require dismissal.

### 1. State Trooper Defendants

The Court dismisses Mr. LeDuc's Eighth Amendment claim against all five state troopers named in his Complaint because Mr. LeDuc has not alleged that they were personally involved in imposing an excessive fine on him. "[A]bsent personal involvement, an individual defendant cannot be liable under § 1983." *Atkins v. County of Orange*, No. 01 CIV. 11536(WCC), --- F. Supp. 2d ---, 2005 WL 1330962, at *14 (S.D.N.Y. Jun. 3, 2005). Indeed, Mr. LeDuc's Complaint is completely devoid of any allegation that any of the five state troopers he has named

as defendants played any role in imposing a forfeiture of his firearms, the act that Mr. LeDuc claims constituted an excessive fine.

The Court notes in particular that while Mr. LeDuc has alleged that State Trooper Kennedy was involved in the *destruction* of Mr. LeDuc's firearms, he has not alleged that Trooper Kennedy was involved in the *forfeiture* of those firearms.  *See* Compl. at 3C-3D, 3F.  "The Excessive Fines Clause . . . limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Bajakajian*, 524 U.S. at 328.  The forfeiture of Mr. LeDuc's firearms occurred when Judge Richards ordered the weapons forfeited (and denied Mr. LeDuc's request to transfer them).  Mr. LeDuc has not alleged that Trooper Kennedy was involved in any manner in Judge Richards' decision to order forfeiture of the weapons.  Instead, his sole allegation is that Trooper Kennedy carried out the state court's order that the firearms, having been forfeited, be destroyed.  *See* Compl. at 3C-3D, 3F.  Therefore, on the facts as alleged in Mr. LeDuc's complaint, Trooper Kennedy could not have violated Mr. LeDuc's Eighth Amendment right under the Excessive Fines clause.

Accordingly, the Court dismisses Mr. LeDuc's Eighth Amendment excessive fines claim against State Troopers Tilley, Webster, Williams, Matson and Kennedy pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[1]

---

[1] Parenthetically, the Court also notes that even if Mr. LeDuc had stated a viable claim against Trooper Kennedy, as a state officer, Trooper Kennedy is also immune from any suit for damages against him in his official capacity because he is a state officer.  Therefore, any claims for money damages against Trooper Kennedy in his official capacity are hereby dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).  *See Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (state officials acting in their official capacity are not "persons" for purposes of § 1983).  Trooper Kennedy would also likely be entitled to qualified immunity on any individual capacity claims.  A state official is entitled to qualified immunity when the official has an objectively reasonable basis for believing in the lawfulness of his actions.  *See Connecticut v. Crotty*, 346 F.3d 84, 101-02 (2d Cir. 2003).  Reliance

**2. Judge Richards**

The Court also dismisses all of Mr. LeDuc's claims against Judge Earl Richards. A judge is absolutely immune for all claims for damages relating to actions taken in his judicial capacity, whether sued in his individual or official capacity. Mr. LeDuc's allegations against Judge Richards, the state court judge who sentenced Mr. LeDuc, exclusively concern the orders he issued in Mr. LeDuc's criminal case, acts that unquestionably performed in the course of Judge Richards' judicial duties. Therefore, Judge Richards is absolutely immune from Mr. LeDuc's claim for damages arising from Judge Richards' actions in Mr. LeDuc's criminal case. *See Cruz v. Superior Court Judges*, No. 3:04CV1103 (CFD), 2005 WL 677282, at *3 (D. Conn. Mar. 21, 2005) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). "Although unfairness and injustice to a litigant may result" due to this rule, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 9 (quotation marks and citations omitted). Accordingly, all claims for damages asserted in the Complaint against Judge Richards are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

Judges are also immune from civil rights claims for injunctive relief based on actions taken in their judicial capacities, unless "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983, *amended by* Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104-317, 110 Stat. 3847, 3853 (1996). Mr. LeDuc has not alleged that any

---

on a presumptively valid court order and statute would ordinarily be sufficient to satisfy this requirement. *Id.*

declaratory decree was violated or that declaratory relief was unavailable. Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (dismissing § 1983 claim for injunctive relief against judge because declaratory relief was available through appeal in state court); *Hultberg v. State*, No. CIV. A. 97-3577, 1998 WL 30288, at *6 (E. D. La. Jan. 28, 1998) (same). Mr. LeDuc has not alleged any facts suggesting that he was unable to take an appeal of Judge Richards' order requiring forfeiture of his weapons. Accordingly, the Court dismisses Mr. LeDuc's claims for injunctive relief against Judge Richards pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

Finally, Mr. LeDuc also seeks a "declaratory judgment" from the Court that "Plaintiff's . . . Eighth . . . Amendment Rights of the U.S. Constitution were violated by the actions of any and/or some and/or all of the above named Defendants." The doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief. *See, e.g.*, *Davidson v. Garry*, 956 F. Supp. 265, 268 (E.D.N.Y. 1996). Nevertheless, the Court must dismiss Mr. LeDuc's claim for declaratory relief against Judge Richards, because any prospective declaratory relief he could conceivably assert is now moot. *See Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980) ("A party's case or controversy becomes moot . . . when it becomes impossible for the courts, through exercise of their remedial powers, to do anything to redress the injury."). The forfeiture order does not constitute an ongoing violation; nor does Mr. LeDuc allege that he will be subject to a similar injury in the future. Therefore, Mr. LeDuc's injury is not one that the Court can redress through a prospective declaratory judgment. *See Stack v. City of Hartford*, 170 F. Supp. 2d 288, 293 (D. Conn. 2001) (" 'A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show that he or she will be injured in the

future.' ") (quoting *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

In essence, Mr. LeDuc's claim for declaratory relief is really a retrospective claim because rather than seeking relief for a future or ongoing violation, his claim is "intertwined with [his] claim for money damages," for it asks the Court to "declare whether a past constitutional violation occurred." *Nat'l Audubon Soc. v. Davis*, 307 F.3d 835, 848 n.5 (9th Cir. 2002) (citing *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995)). However, as the Court has explained, a claim for retrospective relief does not lie against Judge Richards. *See Ippolito v. Meisel*, 958 F. Supp. 155, 165 (D. Conn. 1997) ("[T]he courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs."). Accordingly, the Court dismisses Mr. LeDuc's Eighth Amendment claim for declaratory relief.

### 3. State's Attorney Turcotte

Mr. LeDuc's damages claim against Assistant State's Attorney James Turcotte (in both his official and individual capacity) is similarly barred by the doctrine of absolute prosecutorial immunity. "It is well established that prosecutors have absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 when engaged in activities that are 'intimately associated with the judicial phase of the criminal process' " such as initiation of a prosecution and presentation of the government's case. *Root v. Liston*, 363 F. Supp. 2d 190, 193 (D. Conn. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). This is because "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 14 (D. Conn. 2005) (citing *Imbler*, 424 U.S. at 424-25). Mr. LeDuc's allegations against Assistant State's Attorney Turcotte relate exclusively to actions taken in the course of prosecuting the State's case against Mr. LeDuc. *See* Compl. at 3B ("States

-14-

Attorney James Turcotte asked the Court to order the Plaintiff's seized firearms destroyed."). Accordingly, all claims for damages asserted in the Complaint against Assistant State's Attorney Turcotte are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

In addition to his damages claims, Mr. LeDuc also seeks declaratory and injunctive relief against State's Attorney Turcotte. Unlike claims for damages, the doctrine of prosecutorial immunity does not shield prosecutors from claims for prospective injunctive or declaratory relief. *See, e.g.*, *Nicholson v. Williams*, 203 F. Supp. 2d 153, 246 (E.D.N.Y. 2002). Nevertheless, Mr. LeDuc's claim for declaratory relief against State's Attorney Turcotte is dismissed, because as explained in Part III.D.2, *supra*, the only declaratory relief that Mr. LeDuc seeks is retrospective rather than prospective.

By contrast, Mr. LeDuc's claim for injunctive relief requesting that the Court "impose an injunction to repeal" certain state statutes does seek prospective relief. Compl. at 7, 7B. However, as stated, Mr. LeDuc's request is not one upon which relief can be granted. Putting aside whether the Court could ever actually order such relief[2] – a matter that is very doubtful – it is clear that State's Attorney Turcotte does not have the authority to repeal state statutes. Nor, for that matter, do any of the defendants that Mr. LeDuc has sued. Therefore, even if the Court were inclined and able to order repeal of the statutes, the Court could not order such relief against State's Attorney Turcotte or any other defendants named in this lawsuit.

However, the Court's inquiry does not end here, because construed liberally, Mr. LeDuc's Complaint could also be read to request the Court to enjoin the remaining defendants from

---

[2] *Rial v. McGinnis*, 756 F. Supp. 1070, 1072 (N.D. Ill. 1991) (Shadur, J.) (noting that the principles of federalism and of the separation of powers would likely preclude the ability of the court to grant such a "bizarre" prayer for relief).

enforcing sections 29-37 and 29-38c of the Connecticut General Statues in the future.  Even so construed, the Court would still be unable to grant Mr. LeDuc's request, because he lacks standing to assert a claim for such "preventative" injunctive relief.  In *Lyons v. City of Los Angeles*, 461 U.S. 95, 103 (1983), the Supreme Court held that a plaintiff lacked standing to pursue prospective injunctive relief where he failed to allege a real and immediate threat of harm at the hands of the defendant.  Past harm, the Supreme Court explained, was insufficient to establish standing.  *See Lyons*, 461 U.S. at 106; *Ward v. Murphy*, 330 F. Supp. 2d 83, 98 (D. Conn. 2004) (same).

     Mr. LeDuc's Complaint deals exclusively with past harm.  He has not alleged anywhere in his Complaint that there is a likelihood that he will again be required to forfeit weapons to the State.  Indeed, the possibility that Mr. LeDuc will again be required to forfeit his pistols and revolvers pursuant to section 29-37, or any other provision, seems remote at best given the allegations of the Complaint.  For having been convicted of a felony, Mr. LeDuc is no longer eligible to lawfully obtain pistols and revolvers under Connecticut law.  *See* Conn. Gen. Stat. § 29-28.  In fact, Mr. LeDuc is no longer lawfully eligible to obtain *any* firearm that has traveled through interstate commerce under federal law.  *See* 18 U.S.C. § 922(g)(3).  In the absence of any allegations to the contrary, therefore, the Court concludes that the possibility that Mr. LeDuc will again be subject to the forfeiture provisions of section 29-37 or section 29-38c is speculative at best.  Accordingly, the Court dismisses without prejudice Mr. LeDuc's claims for prospective injunctive relief against State's Attorney Turcotte pursuant to 28 U.S.C. § 1915(e)(2)(B).

## IV.

At this juncture, the Court has dismissed without prejudice all claims set forth in Mr.

LeDuc's Complaint. The Court will allow Mr. LeDuc an opportunity to remedy the defects identified by the Court – if possible. Mr. LeDuc shall file any amended complaint on or before **July 22, 2005**. Mr. LeDuc must also deliver the appropriate service and summons forms as well a copies of the amended complaint to the U.S. Marshals Service so that they may serve any defendants named in the Amended Complaint on or before **July 22, 2005**.

**Failure to comply with this order will result in dismissal of Mr. LeDuc's entire lawsuit, which was filed on January 27, 2005, for failure to serve defendants within 120 days of filing the complaint pursuant to Rule 4(m) of the** *Federal Rules of Civil Procedure*.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut on: June 21, 2005**.